# COURT OF APPEALS OF VIRGINIA

---

**Record No. 0194-25-1**

---

JASMINE IRENE JANAE MEADE
v.
COMMONWEALTH OF VIRGINIA

---

Present: Judges O'Brien, Chaney and Raphael

Opinion Issued June 30, 2026[*]

---

**FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON**
Michael A. Gaten, Judge

(Charles E. Haden, on brief), for appellant.

(Jason S. Miyares,[1] Attorney General; Justin B. Hill, Assistant Attorney General, on brief), for appellee.

---

**MEMORANDUM OPINION**
**PER CURIAM**

A jury convicted Jasmine Irene Janae Meade (appellant) of aggravated malicious wounding, use of a firearm in the commission of a felony, brandishing a firearm, shooting a firearm within 1,000 feet of school property, and three counts of child endangerment. On appeal, appellant argues that the court erred in denying her motions to strike the charges. For the following reasons, we affirm.[2]

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

[2] Having examined the briefs and record in this case, the panel unanimously agrees that oral argument is unnecessary because "the appeal is wholly without merit." *See* Code § 17.1-403(ii)(a); Rule 5A:27(a).

BACKGROUND

We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, we discard any evidence that conflicts with the Commonwealth's evidence, and regard as true all the credible evidence favorable to the Commonwealth and all inferences that can be fairly drawn from that evidence. *Cady*, 300 Va. at 329.

Appellant and Carla Burton are sisters-in-law; appellant is married to Stephen "Randy" Meade, Burton's brother. Following the death of Burton's father, a family dispute arose about selling his trailer. In August 2023, Burton went to her mother's house, where the trailer was located, to retrieve her father's tools. When she arrived, the trailer was empty. Burton entered her mother's house, where appellant spoke to her aggressively. Burton responded, "bitch, don't try me." Appellant then charged at Burton, began "chest bumping" her, pushed her in the face with both hands, and a fight ensued. Both women were swinging with closed fists; neither was struck in the face.

Burton's husband, Nathaniel, tried to break up the fight and pushed appellant off his wife. The three fell to the floor. Once they stood up, appellant charged at Burton, and they fell again. After getting up, appellant started pulling Burton's hair, Nathaniel tried again to break up the fight, and Burton fell a third time. At that point, appellant threatened to hurt Burton in the future.

As Burton and Nathaniel left, appellant stood in the doorway with a gun in her hand, yelling at them, although they could not hear what she said. Burton and Nathaniel returned home and concerned about retaliation, gathered some items, planning to spend the day at Nathaniel's workplace. About five minutes later, they left their house and saw appellant and her husband in their Tahoe SUV "speeding around the corner." The Tahoe stopped directly in front of the

Burtons' car, blocking it in front of a dumpster. Appellant's three minor children were in the back seat of the Tahoe.

Nathaniel, who was unarmed, approached and told Randy to "get the fuck out of the car." Randy came out swinging and tried to punch Nathaniel in the face. The pushing and punching continued until appellant "pulled a firearm," pointed it at Nathaniel's "head at point-blank range" and ordered, "[g]et back, motherfucker." Nathaniel "jogged backward," fearful that appellant would shoot him, then Randy tried to tackle him.

Meanwhile, Burton approached the passenger side of the Tahoe where appellant was sitting and opened the door. Pointing the gun at Burton, appellant told her "Bitch, back up." When Burton froze, appellant shot her. Burton was unarmed.

Randy and Nathaniel stopped when they heard the gunshot, then Burton walked around appellant's car and said that she "had been shot." Appellant and Randy fled.

Burton underwent emergency surgery. The bullet entered her abdomen, lacerated her liver, punctured her gallbladder, damaged her transverse colon, and caused a hernia where part of her small intestine poked through the abdominal wall along the bullet track. There was significant bleeding from her liver. Surgeons removed her gallbladder and a big section of her large intestine. Because the damage caused fecal matter to enter and contaminate her abdomen, she developed an abscess. The first hernia repair was unsuccessful, requiring another surgery. The bullet damaged nerves in Burton's abdomen, leaving no sensation in her stomach and limiting her mobility.

Hampton Police Detective Kai McKinney investigated the shooting. McKinney and Detective Marcus Ghiotto found a Smith & Wesson M&P Shield 9-millimeter firearm in appellant's Tahoe. The eight-cartridge magazine in the firearm contained seven cartridges. McKinney also recovered a fully loaded Glock 23 Gen4 in the car's glove compartment.

Detective Ghiotto determined that the location of the shooting was within 751.5 feet of the property line of Hampton High School.

At trial, Burton's surgeon described her injuries and her surgeries. The surgeon testified that the abscess required a drain placement, and the bullet-related hernia could not be repaired in the standard way because of the risk of infection. Burton also developed sepsis, a "systemic body infection," because of the stool contamination in her abdomen and the resultant abscess. The surgeon opined that Burton had a life-long possibility of developing bowel obstructions and infections.

At the close of the Commonwealth's evidence, appellant moved to strike all the charges. She argued that the Commonwealth did not prove malice. The court found that it was a jury question and denied the motion to strike.

One of appellant's minor children, J.M.,[3] testified for the defense. He stated that on the day of the incident, Burton was "mean-mugging" his mother at his grandmother's house, and the two started fighting. J.M. testified that although appellant told Randy to take her to a hospital, he drove to Burton and Nathaniel's home instead. J.M. initially testified that Nathaniel "started running out the house with his gun in his hand," but later said that Nathaniel did not have a gun. J.M. added that appellant "aimed a gun at [Nathaniel] and told him to back up," which he did. According to J.M., Burton "walk[ed] up and she open[ed] the door and started swinging on my mom," and appellant shot Burton because she had "no more fight left in her, she can't fight back, she just got jumped." J.M. did not see the actual shooting.

Appellant testified that Burton initiated the altercation earlier in the day. She identified her injuries, including a "knot in the back of [her] head," "swelling and scratches on [her] face," a "big scratch and bruise" on her back, and "[r]ips and scratches on [her] chest." Appellant

---

[3] We use the child's initials to protect his privacy.

confirmed that her husband did not take her to the hospital but drove them to Burton's house. She claimed that Nathaniel ran out of the house with a firearm in his hand and started fighting Randy. According to appellant, Burton ran to her car, opened the door, and "started swinging" on her. Appellant said that she pointed her gun at Burton and shot her because she felt "her life was in danger" and she "did not have the will in [her] to fight."

Appellant agreed that her trial testimony was different from the account she initially gave Detective Ghiotto. She said she did not see Nathaniel's gun when he came to the car but saw it when he came from his house. Appellant denied threatening to shoot Nathaniel but acknowledged she had the gun pointed at his head. Appellant stated that she "just didn't" call the police to report the incident and was uncooperative because she "wanted to get [her] kids somewhere safe."

Appellant renewed her motion to strike, emphasizing that J.M.'s testimony verified her account of events. The court found that the issue of self-defense should be decided by the jury, which would determine which witnesses were more persuasive. The court denied the motion.

The jury convicted appellant on all charges, and the court subsequently denied her motion to set aside the verdict. The court sentenced appellant to 73 years and 12 months of incarceration, with 63 years and 12 months suspended.

ANALYSIS

"In the context of a jury trial, a trial court does 'not err in denying [a] motion to strike the evidence [when] the Commonwealth present[s] a *prima facie* case for consideration by the fact finder.'" *Vay v. Commonwealth*, 67 Va. App. 236, 249 (2017) (alterations in original) (quoting *Hawkins v. Commonwealth*, 64 Va. App. 650, 657 (2015)). Whether the evidence is sufficient to prove each element of a crime "is a factual finding, which will not be set aside on appeal unless it is plainly wrong." *Id.* (quoting *Linnon v. Commonwealth*, 287 Va. 92, 98 (2014)).

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). "Thus, 'it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion.'" *Peery v. Commonwealth*, 87 Va. App. 296, 309 (2026) (alterations in original) (quoting *Commonwealth v. Barney*, 302 Va. 84, 97 (2023)).

I. There was sufficient evidence to deny appellant's motions to strike.

A. Appellant maliciously shot and permanently wounded Burton.

Appellant argues that the Commonwealth failed to prove that she acted maliciously in shooting Burton. She posits that "[e]ven if [she] was not entitled to an acquittal based on self-defense, [her] action in shooting Carla Burton was plainly born of sudden fear or anger," at the "sudden appearance of her former assailant," and she was "entitled to have the aggravated malicious wounding charge reduced to unlawful wounding." She further argues that, if her conviction for aggravated malicious wounding is set aside, the conviction for using a firearm in the commission of unlawful wounding cannot stand. The record does not support appellant's arguments.

"The element of malicious wounding that distinguishes it from unlawful wounding is malice, expressed or implied, and malice, in its legal acceptation, means any wrongful act done willfully or purposefully." *Witherow v. Commonwealth*, 65 Va. App. 557, 566 (2015) (quoting *Hernandez v. Commonwealth*, 15 Va. App. 626, 631 (1993)). "The presence of malice 'is a question of fact to be determined by [the trier of fact.]'" *Fletcher v. Commonwealth*, 72 Va. App. 493, 507 (2020) (alteration in original) (quoting *Long v. Commonwealth*, 8 Va. App. 194, 198 (1989)). "[M]alice may be 'inferred from the deliberate use of a deadly weapon.'" *Tizon v.*

- 6 -

*Commonwealth*, 60 Va. App. 1, 11 (2012) (quoting *Luck v. Commonwealth*, 32 Va. App. 827, 834 (2000)). A deadly weapon is "one which is likely to produce death or great bodily injury from the manner in which it is used." *Fletcher*, 72 Va. App. at 507 (quoting *Pannill v. Commonwealth*, 185 Va. 244, 254 (1946)).

"Whether . . . an accused acted with malice is generally a question of fact and may be proved by circumstantial evidence." *Palmer v. Commonwealth*, 71 Va. App. 225, 237 (2019) (quoting *Canipe v. Commonwealth*, 25 Va. App. 629, 642 (1997)). An appellate court does not "distinguish between direct and circumstantial evidence" because the factfinder "'is entitled to consider all of the evidence, without distinction, in reaching its determination.'" *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003)). Accordingly, we will not disturb the court's finding "unless it is plainly wrong or without evidence to support it." *Goodwin v. Commonwealth*, 71 Va. App. 125, 136 (2019) (quoting *Sheppard v. Commonwealth*, 250 Va. 379, 387 (1995)).

The record demonstrates that after the physical altercation with appellant, Burton and Nathaniel went home. As they left, appellant brandished a firearm and yelled at them. Appellant also threatened to hurt Burton. Shortly after Burton and Nathaniel returned home, appellant, her husband, and their three minor children arrived and blocked the Burtons' car in. Appellant had a firearm in her purse.

When Nathaniel responded to Randy's demand for a confrontation, appellant pointed her gun at Nathaniel's head and told him to back off. Burton, who was unarmed, opened the car door and appellant shot her in the abdomen from point-blank range. The gunshot caused extensive and permanent damage to Burton's abdomen, leaving her physically impaired. From these circumstances, the jury reasonably concluded that appellant's actions were malicious.

B.  Appellant did not act in self-defense.

Appellant argues that because she acted in self-defense and without malice, the court erred in confirming the jury's verdict convicting her of aggravated malicious wounding.  We disagree.

"Self-defense is an affirmative defense which the accused must prove by introducing sufficient evidence to raise a reasonable doubt about his guilt."  *Hughes v. Commonwealth*, 39 Va. App. 448, 464 (2002) (quoting *Smith v. Commonwealth*, 17 Va. App. 68, 71 (1993)). "Whether an accused proves circumstances sufficient to create a reasonable doubt that he acted in self-defense is a question of fact."  *Id.* (quoting *Smith*, 17 Va. App. at 71).  The factfinder must determine whether the appellant acted in reasonable apprehension of bodily harm.  *See, e.g.,* *Diffendal v. Commonwealth*, 8 Va. App. 417, 421 (1989) (explaining that a person "is privileged to exercise reasonable force to repel [an] assault" when he or she "reasonably apprehends bodily harm by another").  Self-defense also requires a finding that the force the appellant used was "reasonable in relation to the harm threatened."  *Caison v. Commonwealth*, 52 Va. App. 423, 440 (2008).

"Virginia law recognizes two forms of self-defense to criminal acts of violence: self-defense without fault ('justifiable self-defense') and self-defense with fault ('excusable self-defense')."  *Jones v. Commonwealth*, 71 Va. App. 70, 94 (2019) (quoting *Bell v. Commonwealth*, 66 Va. App. 479, 487 (2016)).  "Any form of conduct by the accused from which the fact finder may reasonably infer that the accused contributed to the affray constitutes 'fault.'"  *Id.* at 94-95 (quoting *Smith*, 17 Va. App at 71).  Excusable self-defense occurs where an accused, "although in some fault in the first instance in provoking or bringing on the difficulty, when attacked retreats as far as possible, announces his desire for peace, and kills his adversary from a reasonably apparent necessity to preserve his own life or save himself from great bodily

harm." *Avent v. Commonwealth*, 279 Va. 175, 200 (2010) (quoting *Yarborough v. Commonwealth*, 217 Va. 971, 975 (1977)).

There is no dispute that appellant and Burton engaged in a physical altercation earlier in the day. But that encounter had ended, and Burton and Nathaniel returned to their home. Appellant and Randy followed the Burtons to their home and immediately provoked a renewed dispute by blocking their car. Appellant cannot claim justifiable self-defense because she was at least "'slightly at fault' in creating the difficulty leading" to the incident when she went to Burton's home. *Jones*, 71 Va. App. at 94 (quoting *Smith*, 17 Va. App. at 71). *See also Avent*, 279 Va. at 203 (explaining that if the "defendant is even slightly at fault, the killing is not justifiable homicide" (quoting *Perricllia v. Commonwealth*, 229 Va. 85, 94 (1985))).

Appellant also did not retreat or announce her desire for peace but instead, brandished a firearm and then shot Burton—who was unarmed—at point-blank range.

The jury had to decide between two competing versions of the event. The jury accepted the Commonwealth's evidence that appellant shot Burton without attempting to retreat or announcing her desire for peace, which was necessary for excusable self-defense. The jury was not required to believe appellant's self-serving account. It is the jury's prerogative to determine witness credibility and disregard testimony accordingly. *See Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) ("Determining the credibility of witnesses . . . is within the exclusive province of the jury . . . ." (first alteration in original) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993))). Considering all the circumstances, including its implied credibility determination, the record supports the jury's conclusion that appellant was not acting in self-defense when she shot Burton.

II. Appellant recklessly endangered her minor children.

"Any parent, guardian, or other person responsible for the care of a child under the age of 18 whose willful act or omission in the care of such child was so gross, wanton, and culpable as to show a reckless disregard for human life is guilty of a Class 6 felony." Code § 18.2-371.1(B)(1). A willful act or omission "imports knowledge and consciousness that injury will result from the act done." *Morris v. Commonwealth*, 272 Va. 732, 738 (2006) (quoting *Barrett v. Commonwealth*, 268 Va. 170, 183 (2004)). The conduct "must be knowing or intentional, rather than accidental, and [undertaken] without justifiable excuse, without ground for believing the conduct is lawful, or with a bad purpose." *Id.* (alteration in original) (quoting *Commonwealth v. Duncan*, 267 Va. 377, 384 (2004)). "[T]he term 'willful' . . . contemplates an intentional, purposeful act or omission." *Id.* (second alteration in original) (quoting *Duncan*, 267 Va. at 384-85). Appellant maintains that the evidence was insufficient to convict her of three counts of felony endangerment because her "husband . . . overrode her wish to go . . . to the hospital" and that there was no evidence that appellant "endorsed her husband's decision to take her[] and the three children to the Burtons' residence." We find appellant's argument unpersuasive.

The evidence established that appellant decided to bring her three minor children to a confrontation where she brandished her loaded firearm and pointed it at Nathaniel's head. While still in the car and in full view of her children in the back seats, appellant shot Burton point-blank in the abdomen. Brandishing, and then discharging, her firearm in the immediate presence of her young children showed a reckless disregard for human life and placed them in peril. The evidence supports the jury's conclusion that appellant's intentional conduct created an environment that was likely to result in injury to her children. *Morris*, 272 Va. at 738.

## CONCLUSION

Accordingly, we affirm the circuit court's judgment.

*Affirmed.*